**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| DEBRA J. RENFROW, | CIVIL NO. 04-4883 DWF/AJB |
| PLAINTIFF, | |
| v. | REPORT AND RECOMMENDATION ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | |
| DEFENDANT. | |

Edward C. Olson, Esq., for plaintiff, Debra J. Renfrow

Lonnie F. Bryan, Assistant United States Attorney, for the Commissioner of Social Security

## I. INTRODUCTION

Plaintiff Debra J. Renfrow (Renfrow) disputes the unfavorable decision of the Commissioner of the Social Security Agency (Commissioner) denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. This matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a report and recommendation to the district court on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636 (b)(1) and Local Rule 72.1. Based on the reasoning set forth below, this court **recommends** that Renfrow's Motion for Summary Judgment [Docket No. 12] be **denied** and that the Commissioner's Motion for Summary Judgment [Docket No. 19] be **granted**.

## II. ISSUE

1

The only issue before the court is whether the Vocational Expert (VE) referred to positions that were beyond Renfrow's capabilities as found by the ALJ. Renfrow does not challenge the ALJ's findings with regards to her ability to perform, but only the ALJ's reliance on the testimony of the VE regarding jobs that were available in the economy which Renfrow would be able to perform. Because Renfrow appeals only the VE's testimony and the ALJ's reliance on that testimony, this repot will only briefly describe the medical evidence in the record and will primarily focus on the testimony by the VE.

### III.  PROCEDURAL HISTORY

Renfrow protectively filed an application of disability insurance benefits on February 20, 2001. (T. 48.) She alleged a disability onset date of July 10, 1996, based on mitral stenosis, congestive heart failure, numb fingers on her right hand, and muscle tightness across the neck. (T. 65.) Her application was denied initially and on reconsideration. She requested and received an administrative hearing before an administrative law judge (ALJ). On July 23, 2003, ALJ Donald Holloway issued an unfavorable decision, denying benefits. (T. 29.) Renfrow's request to the Appeals Council for review was denied. Accordingly, the ALJ's decision became the final decision of the Commissioner and open to review by the district court..

### IV.  FACTUAL BACKGROUND

Renfrow was born on May 27, 1956, and was 46 years old at the time of the administrative hearing. (T. 21, 48.) She had completed high school through the 12th grade and completed special training as a human services technician in 1995. (T. 71.) She worked for 21 years as a Human Services Technician for the State of Minnesota. She explained that she left her employment at the state

in July 1996, because she moved and because she wanted to find another job that did not require as much heavy lifting. (T. 315.)

**V.      MEDICAL EVIDENCE**

Renfrow has been diagnosed with mitral stenosis[1] (T. 102), congestive heart failure (T. 155), mild carpal tunnel syndrome (T. 108), dysthymia,[2] obesity (T. 178), major depression (T. 125.), and sleep apnea (T. 157). She has a history of neck and shoulder pain (T. 294.) She has been treated for recurrent bronchitis (T. 165), asthma (T. 184), and edema (T. 173). In September 2001, Renfrow under went surgery for "right guided carpal tunnel release" by Dr. Matthew D. Putnam. (T. 287.) Dr. Putnam stated on December 12, 2001, that Renfrow could utilize her upper extremities for light activities. (T. 258.) A work ability evaluation completed in December 2001, indicated that Renfrow could perform sedentary to very light work. (T. 254.) Lifting was limited to 10 pounds maximum with frequent lifting limited to three pounds. (*Id*.) On March 6, 2002, Renfrow was released from active care by Dr. Putnam. (T. 256.) Another work ability form was completed on that same day indicating that Renfrow could return to work, but that she would be limited to sedentary work with no use of her right arm and lifting of no more than three pounds. (T. 153.) On November 15, 2002, Dr. Stephen E. Hanske, Renfrow's treating physician, opined in a letter to Renfrow's attorney that Renfrow was

---

[1]      "Mitral stenosis is a narrowing or obstruction of the opening of the mitral valve, which separates the upper and lower chambers on the left side of the heart. This prevents adequate blood flow between the left atrium (upper chamber) and ventricle (lower chamber)." *MedlinePlus Medical Encyclopedia* at http://www.nlm.nih.gov/medlineplus/ency/article/000175.htm.

[2]      "Dysthymia is a chronic form of depression, characterized by moods that are consistently low, but not as extreme as other types of depression." *Id*. at http://www.nlm.nih.gov/medlineplus/ency/article/000918.htm.

disabled and unable to work due to her cardiac condition and her sleep apnea. (T. 156.) He noted that "currently her congestive heart failure is compensated and her depression has improved as well." (*Id*.) He also noted that she was not being treated for her sleep apnea and had refused to follow medical advice regarding the use of a device that could possibly improve her sleeping problems. (*Id*.)

### VI.    VOCATIONAL EXPERT TESTIMONY AT THE ADMINISTRATIVE HEARING

After the ALJ had questioned Renfrow at the administrative hearing regarding her physical and mental limitations, , the ALJ presented the following hypothetical to the VE, Warren Haagenson, and asked whether a person under the hypothetical would be able to perform Renfrow's past relevant work:

> If we hypothetically take a woman 40 to 45 years of age, with education and work experience like the claimant's has, and if she's limited to lifting 10 pounds maximum, and  - - but primarily with her left nondominant hand and cannot be using her dominant hand for any strenuous or repetitive activity, and cannot be lifting over 3 pounds with occasionally, and she cannot be expected to do complex technical work, should have only brief and superficial [contact] with other, and let's say those are the only limitations our hypothetical person had.

(T. 326.) The VE repleid that a person under the hypothetical would not be able to perform Renfrow's past relevant work.

The VE went on to explain that there were a significant number of jobs in the national economy that a person with the limitations set forth in the hypothetical could perform. The VE testified: "[You would] have to look at the sedentary level of work and you have to look into things like information clerks, customer service clerks, those types of occupations." (T. 330.) The ALJ then asked whether these types of jobs would require repetitive use of the hands. (*Id*.) The VE stated that under

information clerks, those that work at hospitals or rest areas or "that kind of thing" would not require repetitive use of the hands. (*Id*.) He noted that these jobs would require Renfrow to meet a schedule of the customary eight hour day, five days a week. (*Id.*)

### VII.    THE ALJ'S FINDINGS AND DECISION

On July 23, 2003, the ALJ issued his decision finding that Renfrow was not disabled. In determining disability, the ALJ followed the sequential five step procedure as set out in the rules. *See* 20 C.F.R. §§ 404.1520(a)(4). The Eighth Circuit has summarized these steps as follows:

> The Commissioner must determine: (1) whether the claimant is presently engaged in "substantial gainful activity;" (2) whether the claimant has a severe impairment--one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity [RFC]$^3$ to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Fines*, 149 F.3d at 895 (footnote added).

Based on the above regulations and his review of the evidence in the record, the ALJ determined that Renfrow satisfied the first four steps of the process. In addition, the ALJ proceeded through the steps required when a claimant has claimed a mental impairment. These additional steps as outlined in § 404.1520a. According to this section, the ALJ must rate the claimant's degree of limitation in four broad functional areas. § 404.1520a(c)(3). These four areas are: activities of daily

---

[3] A claimant's RFC is the most the claimant can still do despite the claimant's physical and/or mental limitations. 20 C.F.R. § 404.1545.

living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* The ALJ must rate the degree of limitations on a five-point scale: None, mild, moderate, marked, and extreme. § 404.1520a(c)(4). The ALJ determined that Renfrow was mildly impaired in her activities of daily living and in social functioning, had moderate difficulty completing tasks in a timely manner due to deficiencies in concentration, persistence and pace, and has not suffered any repeated episodes of decompensation. The ALJ concluded, based on these findings, that Renfrow could not perform her past relevant work, but would be restricted to sedentary work with certain restrictions. These findings are not challenged by Renfrow.

Because the ALJ found that Renfrow could no longer perform her past relevant work, the burden shifted to the commissioner to demonstrate that, based on Renfrow's age, past relevant work, and RFC, she would be able to perform jobs that are of significant number in the economy. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). ALJ Holloway determined that, based on a review of the medical evidence, Renfrow had the RFC to perform sedentary work . Relying on the testimony of the VE, the ALJ decided that there were significant jobs in the national economy that Renfrow would be able to perform. (T. 29.) The ALJ noted that examples of such work would include information clerk with 15,000 jobs and customer service clerk with 30,000 jobs. (*Id*.) Accordingly, the ALJ found that the Commissioner had met her burden and that Renfrow was not disabled within the meaning of the Social Security at any time prior to June 30, 2002. (*Id*.)

**VIII.   DISCUSSION**

    *A.*     *Standard of Review*

This court will affirm the ALJ's findings that the claimant was not under a disability if the findings

are supported by substantial evidence based on a review of the entire record. *Haley v . Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the decision." *Id.* (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). The review the court undertakes, however, must go beyond solely the examination of the record for evidence in support of the Commissioner's decision. *Id.* The court must additionally examine the record for evidence that detracts from that decision. *Id.* Nevertheless, as long as there is substantial evidence to support the decision, this court will not reverse it simply because substantial evidence exists in the record that would support a contrary outcome or because this court might have decided differently. *See id.*

    *B.*    *Analysis*

Renfrow argues that the conclusion that she was able to work as an information clerk and customer services clerk was not based on substantial evidence because the VE's testimony was not consistent with the work requirements listed in the Directory of Occupational Titles (DOT). Renfrow asserts that the exertion level of an information clerk, as defined in the DOT, is for light work. Likewise, Renfrow argues, the exertion level for customer service clerk is also a level of light work. Renfrow argues that this level of exertion is beyond her capability as found by the ALJ. Renfrow concludes that because the ALJ relied on faulty information from the VE, the Commissioner failed to satisfy her burden of demonstrating that there were jobs in the economy that Renfrow could perform an the ALJ's determination of non-disability was not based on substantial evidence.

According to the Eighth Circuit, generally, an ALJ may not rely upon the testimony of a vocational expert if the expert's testimony conflicts with the DOT. *Smith v. Shalala*, 46 F.3d 45, 47

(8th Cir.1995). The Eighth Circuit has allowed, however, that the ALJ may rely on testimony that conflicts with the DOT, if the VE has demonstrated that "particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform." *Young v. Apfel*, 221 F.3d 1065, 1069 -1070 (8th Cir. 2000) (quoting *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir.1995)). Acknowledging the sedentary limitations imposed by the ALJ, the VE answered the posed hypothetical by stating that someone with the limitations stated in the hypothetical would be able to perform jobs like information clerk and customer service clerk. He stated that there would be approximately 15,500 jobs in the national economy for information clerks that were in the sedentary classification of work. (T. 331.) He also stated that there would be approximately 30,000 jobs in the customer service category. (*Id*.) The VE did not explain whether these job description were consistent with the DOT, nor did he specify the exact code for these job descriptions.

Within the DOT is an entire section of occupations entitled "Information and Reception Clerks." Eleven of the fourteen distinct occupations listed in this section are categorized as having a sedentary activity level. *See* Dep't of Labor, *Dictionary of Occupational Titles* (DOT), *Information and Reception Clerks* (4th ed. 1991) *available at* http://www.oalj.dol.gov/public/dot/refrnc/dot02b.htm. Within this section there are four occupations that are referred to as "information clerk." These are (1) Information Clerk, Automobile Club (non-profit organization), DOT No. 237.267-010; (2) Information Clerk (clerical), DOT No. 237.367-022; (3) Information Clerk (motor, railroad, and water transportation), with an alternative title of travel clerk, DOT No. 237.367-018; and (4) Telephone Quotation Clerk (financial), with the alternative titles of information clerk, quote clerk, and telephone-information clerk, DOT No. 237.367-046. *Id*. Three of these occupations, DOT Nos. 237.267-010,

237.367-022, and 237.367-046 are listed as requiring sedentary levels of activity. *Id*.

The VE specified that he was referring to information clerks that were within the sedentary activity level. Because there are occupations within the DOT, listed as information clerks, that are consistent with the limitations imposed by the ALJ, there is no conflict between the DOT and the VE's testimony. Accordingly, the ALJ could properly rely on the VE's opinion that there are approximately 15,500 jobs for information clerk within the national economy.   *See Young*, 221 F.3d at 1069 -1070.

Because there are sufficient jobs within the if information clerk category it would not be necessary that the court review the testimony of the VE regarding the number of jobs in the customer service clerk category. There is, however, within the DOT, a classification of an occupation entitled "customer service clerk,' which requires only sedentary activity level. Policyholder-Information Clerk, DOT No. 249.262-010, has the alternative title of customer-service clerk and requires a sedentary level of work. See DOT, *Miscellaneous Clerical Occupations, N.E.C.* (4th ed. 1991) *available at* http://www.oalj.dol.gov/public/dot/refrnc/dot02c.htm. Thus, the VE's opinion with respect to the ability of Renfrow to perform jobs within the customer service clerk category is consistent with at least one occupation described in the DOT and it was not improper for the ALJ to rely on information from the VE that was consistent with the DOT.

### IX. CONCLUSION AND RECOMMENDATION

Accordingly, because there is no conflict between the VE's testimony and the DOT regarding the exertional level of information clerks and customer service clerks, the ALJ's decision was based on substantial evidence. The court concludes, therefore, that the ALJ's finding that Renfrow failed to meet the criteria for disability insurance benefits under the regulations of the Social Security Agency is based

on substantial evidence. Accordingly, the court **recommends** that Renfrow's Motion for Summary Judgment [Docket No. 12] **be denied** and the Commissioner's Motion for Summary Judgment [Docket No. 19] **be granted**.

Dated: December 13, 2005

                 s/ Arthur J. Boylan
                 Arthur J. Boylan
                 United States Magistrate Judge

### NOTICE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court on or before **December 29, 2005.**